Good morning, your honors. May it please the court. Tabitha Pollock is innocent of the crimes for which she was indicted. unless she had actual knowledge that her children were being beaten in a manner that created a substantial risk of death or a great bodily harm, and despite that knowledge, callously left them with the man who she knew for a fact knew was abusing them. Let me put it another way. Tabitha Pollock is innocent of the crimes for which she was indicted unless the evidence shows that she was of the mindset of walking around the streets saying, yes, I know that Scott is home with the kids, and I know he severely beats the kids to the point that they may well die while in his care, but I don't care. I'll let him watch the kids, and if they die, they die. That is, of course, a drastic, drastic conclusion that no court has ever reached, at least until the Certificate of Innocence proceeding below. And what I want to describe for your honors is the extent to which the judge in the Certificate of Innocence case was by no means writing on a clean slate. And indeed, there had been many things said about this case that showed affirmatively the absence of any such evidence, and in fact, affirmative evidence that that was not the case. Let me begin, if I may, with the late Judge Hanson. He presided at the trial, took it very seriously. He said he took over 40 pages of notes during the trial. Now, the court knows that the jury that convicted Ms. Pollack was instructed that it was enough for them to find that she should have known that she was negligent. So the jury's verdict was opaque as to whether they found that or they found that she had actual knowledge. They didn't have to find that under the instruction. But Judge Hanson thought it was critical for his sentencing, in terms of whether to impose a life sentence, for him to make a finding on whether this was an actual knowledge case or whether this was a case of should have known, which we now know cannot support guilt. Now, in making that finding as part of sentence, we all know the standard that is used, a preponderance of the evidence standard, same standard talked about here in the Certificate of Innocence. So he wasn't saying the proof of X was not beyond a reasonable doubt. He was making a straight-up finding under preponderance. Here's what he said. On page 1250 of the transcripts, he said, from the point of view of Tabitha Pollack, subjective awareness, what she knew, she felt she had made a good choice of boyfriends. He said she didn't realize this was another bad choice. She thought she'd made a choice of a good, right choice. She talked about taking the kids to Dairy Queen and so forth. That very thing that made her feel he was a good choice throughout this period probably also blinded her, blinded her to some of the things that were occurring around her. He goes on to say, she should have known. I'm fine with the jury's verdict that she should have known. It was negligent not to know. But he makes it clear that we're using hindsight to try to imagine that she actually did know. He said these things were gradual. They weren't things that simply came about, and therefore the case, he said, was based on an abdication of her responsibility to figure it out. He should have recognized. And of course, that's consistent with so much evidence in the case. There were so many people who knew so many of the same things Tabitha Pollack knew. Her mother, for example, a registered nurse. Her mother knew about the fall down the stairs. Her mother knew about the fall in the bathroom. Her mother had access constantly to Jamie to see any sort of bruising that was happening. And there was evidence that Jamie bruised very easily anyway. And in fact, your honors, there's evidence in the record that she tested with a hemoglobin of 7.9, which is basically transfusion worthy, and of course will lead to a lot of bruising. Let me ask you, let me interrupt you for a second and ask you a question. Doesn't your argument conflate not guilty with innocent? No, your honor. Not guilty would be a showing that the state could not, beyond a reasonable doubt, prove innocence. I am willing to assume, and I'm assuming today as the argument I'm advancing at this moment, that the preponderance standard would suffice here. In other words, imagine that preponderance, we know, is 50.01%. Imagine that proof beyond a reasonable doubt is 85, 90, whatever figure one likes. There's a delta there. There's a delta in which there's proof by a preponderance and yet still not proof beyond a reasonable doubt. Well, that person is not guilty, but I'm going to argue in the way I'm presenting this case right now is that person wouldn't be innocent necessarily for purposes of the certificate of innocence. Now, there's another argument to be made, and I'm not waiving the argument, that when the legislature used the word innocent, it actually was tapping into the accepted definition that's used, for example, in the freestanding claim of innocence under Washington, in the Post-Conviction Act, in federal court, which is that no jury could convict. But I'm not relying on that because I don't need to rely on that. Because by the preponderance standard, it is plain that if she knew, then we have to say her mother knew as well. Now, you could say, well, her mother was also some callous animal who was just fine leaving her grandchildren with this person who they know is abusing and ready to cause death. Well, we know that's not true. We know that when the oldest child, Jack, was diagnosed with asthma, that the mother was so concerned about his health, and this is all in the record, that she reached out and said, I don't want him in the house because people are smoking. He needs to come live with me. So he's not exposed to secondhand smoke. And yet, we're supposed to believe that the same type of evidence that Tabitha Pollack caused her to know about this grave peril of death, mother didn't bother. The sisters, Sue Ostrowski, didn't bother. The doctors who examined, but let me complete sort of this. Let me ask you this. This little girl told her mother that her boyfriend choked her. So there's evidence, Your Honor, that on one occasion, this three-year-old girl, who the evidence shows was in fact not excited about a new stepfather figure in the picture. Now, we now, with hindsight, know why she wasn't excited, and it's a tragic, awful story that my client lives with and is tormented by every single moment of every single day that she didn't realize, that she should have realized. It absolutely eats her. But when she heard from this girl, not believing for a second that Scott English, the guy that she thought was the right guy, according to Judge Hanson, the guy who took the kids to Dairy Queen, and she believed him when the three-year-old girl said, oh, choked me, they looked at the neck. There was no marks on the neck. There was no evidence of any choking. And the evidence shows that this three-year-old girl had a penchant. The testimony was that she didn't look at the neck. She just said, the girl said, he choked me, and her response was immediately, oh, she makes stories. And the testimony, however, is that Leslie Huber, who was in the car and testified about this, did look at the neck and observed no markings. And of course, Leslie Huber also didn't think this was of any significance in the sense that she called DCFS, called the police, talked to Tabitha's family. It was a three-year-old girl who, as I said, the testimony reflected had a penchant, as many three-year-old girls do. There's a reason we don't let three-year-olds testify. They don't know the difference between truth and a lie. They don't. They make up stories. And Tabitha, again, should she have known, Your Honor, should she have said, oh, wow, this may not be one of those stories that she's making up. We're not defending Tabitha on a negligence charge. But is it the case that she had actual knowledge? And here's perhaps the most powerful piece of evidence, and the Supreme Court relies on it as well. If Tabitha Pollock knew that this man was a thief, then why so many times that there was one of these injuries that she was concerned about, she suspected, not suspected, but she was suspicious is the better word. Why did she go to her mother and say, hey, Mom, Tabitha, I'm told, fell down. Here's the injury. Does that make sense to you? And by the way, there was a metal stool on the bottom, and the mother says, yeah, registered nurse. The mother says, yeah, that makes sense, as does the sister. Now, the last thing that a person who knows that their child is with an abuser, not just an abuser, because the Supreme Court says that's not enough. It has to be an abuser who's abusing them so severely that it puts them in grave danger of death or great bodily harm. Why in the world would she go to people and ask? Why would she talk to Scott even? Why would she go to Scott and say what happened? She knows what happened if we believe the idea that she had that actual awful knowledge. Well, when this case came before this court after the conviction, when the law still did provide for the idea of should have known equals accountability, this court upheld the conviction. But in looking at sufficiency, the court simply said the mysterious injuries should have told the defendant that her boyfriend was abusing the children. Now, I'm not claiming that's dispositive to say nothing this court said is contrary to what Judge Hanson had concluded. But even more critically, when it came to the Supreme Court, the Supreme Court not only reversed outright on reasonable doubt. And I understand, as I was talking with Justice Schmidt about a moment ago, that's a different standard. And I understand why the state argues that's not a binding conclusion on the certificate of innocence, although arguments can and we have made. But leave that aside for a moment. What's critical, though, is the Supreme Court dissected particular pieces of evidence. And on various ones of those pieces, the court did not say this does not get to reasonable doubt. The court said there is absolutely no evidence to support this inference. For example, one of the issues that Judge Stengel relied on was the fall down the stairs. That should have been part of what put Ms. Pollack on notice. Well, here's what the Supreme Court said. Nor was there any evidence that Scott was in any way responsible for either of the falls Jamie had. And the court explains, critically, Scott's father testified that he heard her coming down the stairs first. He went to the stairs and then saw and heard Scott coming out of the bathroom. So there was affirmative testimony that that had nothing to do with Scott pushing child. Look, even children who are abused also have accidents. And then the court said, quote, the fall, therefore, was simply a fall. It was not evidence of Jamie's abuse by Scott, close quote. Thank you. And the dissent in the Supreme Court saw things a little, analyzed that evidence a little differently, didn't it? Indeed, Your Honor. But the law of the case doctrine tells lower courts or tells any court that they need to follow the decision of the court, not the decision of the dissent. Well, but we're not relying on either one in the sense that what you just discussed was nothing more than dicta. And the issue here is the issue before the Supreme Court was not whether your client was innocent, but whether there was sufficient evidence to prove her guilty beyond a reasonable doubt. Again, on the ultimate conclusion, that's clearly right. But this was by no means dicta. This was the essential predicate holdings about the individual issues that the state had been relying on. And the law of the case doctrine is very clear that it's not only the ultimate holding that binds other courts, but it is, in fact, the absolute holdings with respect to particular facts. And on these facts, and I'm running out of time, but I will submit to and perhaps be able to develop this in a bit on rebuttal, that not only the stairs, but the element of the stitches, the court says there is not any evidence and the doctor didn't see it. And then the court says, and it ties into what was said in the last argument, the court says any inference, any conclusion that that shows abuse or knowledge would require, quote, conjecture and speculation. Now, I submit to your honors, how could it be that the Supreme Court of Illinois says that no jury could in all credit that evidence unless it engaged in conjecture and speculation? And then there's an opinion on a certificate of innocence in which the judge relies on the very exact fact, not the judge who presided, because we know what that judge thought. He said, no, she didn't know. But the judge who just looked at the papers, including the Supreme Court, without ever acknowledging the Supreme Court decision, says, I'm going to rely on the stitches. And the Supreme Court said, as a matter of law, that is conjecture and speculation. Thank you, your honors. Thank you, Mr. Marshall. And Mr. Leonard? May it please the court, counsel. Mr. Marshall gave us a good summary of the history of the case. But we're here today on a certificate of innocence. This is a new proceeding. The law of the case was what really did not apply here. That would only apply if we were trying tepid apology again on the criminal charges. This is a new proceeding. It's a civil proceeding. I want to get to the standard of proof and the standard of review. The burden of proof here is the petitioner here, Tabitha Pollack, has to prove by a preponderance of the evidence innocence. And I would submit to you that that is a higher standard of proof than guilt beyond a reasonable doubt. She has not, at the abuse of reasonable doubt standard, all you have to show is some reasonable doubt. But at this standard, innocence, I believe, is a much higher standard than behind a reasonable doubt. Because how do you show your innocence? I believe that you have to show it in this case by a preponderance of the evidence. But even though the preponderance is a lower standard than guilt beyond a reasonable doubt, you have to show innocence, which greatly raises the bar. And the petitioner did not show that at the certificate of innocence hearing. Now the standard of review here, a petitioner argues for de novo review. But that is based on the Vincent case and the Cabales case. Those were successive post-conviction petitions and 2-1401 petitions. And the law is clear that that is de novo. But we have three published cases in Illinois on certificate of innocence. And all three cases say that the standard of review is abuse of discretion. Now I just want to go over a summary of the evidence that shows that Tabitha Pallett knew that Scott English was abusing her children. But Mr. Leonard, before you do that, can I ask a question about the statute? Yes. We're dealing with section 2702G. Okay. And it sets out four things that the petitioner has to prove in order to get a certificate of innocence. Yes. Three of those things are conceded, apparently. Yes. There's no dispute about them. So it's only number three that we're looking at. Number three says the petitioner is innocent of the offenses charged in the indictment or information. Or his or her acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the state. Yes. Is that not what the Supreme Court found? No. The Supreme Court found that the petitioner here was not guilty beyond a reasonable doubt. This is a separate proceeding. I don't believe that that language equates with the argument that the indictment was not or a felony was not committed. All the Supreme Court found was that people failed to prove beyond a reasonable doubt that the felony was proven. I believe those are two different things. And if that was the case, that would be what the plaintiff petitioner argues, that the Supreme Court found that I was not guilty, so therefore you have to give me a certificate of innocence. However, that issue was rejected by the Fields Court. Briefly, in that case, the petitioner had been found guilty. The appellate court overturned his conviction. He filed a certificate of innocence claim. The trial judge there simply found, well, this court found that you were not guilty, so I have to give you this certificate of innocence, which the trial judge did. The people appealed to the Supreme Court, and the Supreme Court said, no, that's not the case. It is the petitioner's burden to prove by a preponderance of the evidence his innocence, or else there would be no need for a hearing on a certificate of innocence. It would seem that Fields is very different from this case, because in this case the Supreme Court looked at each specific piece of evidence and said this act and this omission is not enough to prove the crime. And it seems to me that's exactly what Three is saying. His or her acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the state. And that's exactly what the Supreme Court found. Well, I disagree. I believe the Supreme Court found that the people failed to prove beyond a reasonable doubt, and they stated their opinion why this was not the case. However, that case is gone, and now we have these new proceedings. And I would disagree with your interpretation of Section 3 of the Act, simply because the court found that it wasn't proven guilty beyond a reasonable doubt. We would not be here. There would be no reason for the certificate of innocence. I believe it's that you are reading it too broadly. I believe that it should be more narrow, or else it would be simply we would not be here because the Supreme Court ruled you're not guilty beyond a reasonable doubt. You get a certificate of innocence, and that would be the end of the case. Well, isn't it possible that sometimes a hearing is necessary, and sometimes, although you have a hearing, all of the dispositive facts have been decided by the higher court? No, because the trial judge does not have to rely on those findings by the Supreme Court. That was a criminal proceeding. This is a civil new proceeding. Even though the Supreme Court found different findings of that, I don't believe that that law of the case would apply here because this is a new proceeding. I believe the law of the case would only apply if it was another criminal case. Do you have any authority for that? I don't have any authority with me on that, but I would be happy to. Did you cite any in your brief? I did not cite any in my brief. Let me ask you a question. If the challenge is to the sufficiency of the evidence, the reviewing court has to look at all the operative facts, right? Yes. What else would they do to say, and so if in this case what the Supreme Court said was the state didn't produce sufficient evidence to convict beyond a reasonable doubt, and therefore case over, conviction reversed. That's the whole thing. Which is a far different thing from saying this person is innocent of the crime charge. Yes. And that's what the... Because if a finding of an insufficiency of the evidence, and therefore reversal is equivalent to a finding of innocence, then every time the court of review finds that the state failed to prove someone guilty beyond a reasonable doubt, that person would be entitled to a certificate of innocence, wouldn't they, if that's the theory? That's the theory, yes. And we all know that if you've proven guilty beyond a reasonable doubt, that does not mean that you are innocent of the crime. It merely says that you were not proven guilty beyond a reasonable doubt. And I don't believe the petitioner met her burden at the hearing. Just briefly, with my time remaining, I'd like to go over the facts that shows that Tabitha Pollack knew that her children were being abused, not that she suspected they were being abused. She was in denial. She chose her boyfriend over the welfare of her children. In 1993, Shane Johnson, a friend of Tabitha Pollack, told her, Tabitha, that Scott English kicked her young son Preston in the genitals. She didn't do anything about that. Then we move to July 1995. English babysat for Preston and Jamie. And when Tabitha Pollack came back to pick up the children, Preston had strangulation marks on his neck, and he told Ms. Pollack that English had choked him. Of course, English came up with the explanation that Preston was falling in the tub and I grabbed him to keep him from falling, and I must have grabbed his neck. So Ms. Pollack took Mr. English's statement at face value and continued that relationship. About two weeks before Jamie's death, the incidents increased. That's when Ms. Pollack moved in with Mr. English and his parents. The child's grandmother said that English... Let me re-explain. The child told Ms. Pollack's mother, this would be the child's grandmother, that English had held her foot very tightly and there was a bruise there. The grandmother looked at the foot and there was a bruise. She confronted Ms. Pollack with this information, and she said, the child makes up stories. Then the child received other injuries while English was the only one babysitting the child. The child received injuries when she fell in the bathtub. We later learned that English was giving his son a bath along with Jamie, and he elbowed the child and she fell in the bathtub. A little later, in that two-week period, the child was brushing her teeth and allegedly fell off of a stool and cut her lip, and she had to have stitches for that. At the autopsy, the child had over 100 bruises on her body. The plaintiff here, Ms. Pollack, had bathed the child the day earlier and she noticed that the child had small bruises on the right and left sides of her neck to bruises in the rib area on her back and a round, circular-type bruise on her buttocks. Ms. Pollack was only eight hours short of an LPN degree, and none of this evidence she believed that Mr. English was abusing her children. Thank you, Mr. Leonard. Mr. Marshall? Your Honors, Mr. Leonard got it right. He got it right. He said Tabitha Pollack was, quote, in denial. I didn't say that. He said that. Well, let me ask you something. Your last point was that the Supreme Court said it'd take conjecture and speculation. Well, couldn't reasonable people agree that when you're trying to prove knowledge on somebody's part, that it's always, you know, unless the person admits I knew, that you're always looking at facts and that reasonable people could say, well, it's conjecture and speculation because how do you prove what somebody knew? But we know the law allows those conclusions based on the evidence, right? And if, in fact, your burden was to prove by a preponderance of the evidence that the state failed to prove your client guilty, you're right. You're already there. You win. But your burden is to prove not that, but that your client is innocent. Our burden is to show that there is no evidence, even by a preponderance of the evidence. Again, hypothetically, I'll assume for now that that's our burden. And yet the fact is that, yes, of course, there are inferences that get drawn. But the point of ruling out conjecture and speculation is when the Supreme Court is saying, this would not be an inference that is based on reason. Again, the father, no one is claiming has any incentive but to tell the truth. This is the grandson of one of the children, grandfather of one of the children. He says he went to the stairs, and as he's going to the stairs is when he sees Scott coming out of the bathroom. How can you then say that is evidence of abuse? The grandparents both say that when they went to the other incident of the bathroom with the stitches, there was a tin on which the children used up, popcorn tin, on which they used to stand, and it had bent out of shape, which hadn't been the case before, and there was toothpaste all over Jamie, which was consistent with the story that she was brushing her teeth, and this tin collapsed, and she fell. So yes, inferences, reasonable inferences, but the whole point of conjecture and speculation is to say it's an absolute guess. But again, I want to return to Mr. Leonard saying that she was in denial, that she took, in another quote, she took Scott English's accounts, quote, at face value. Now the fact is that's our case. That's precisely our point. It's precisely what Judge Hanson said when he found she didn't know. I have a preponderance of the evidence, not beyond a reasonable doubt. And again, I want to return to the point that there's two things going on in the Supreme Court's decision. There's the ultimate conclusion, and Justice Schmidt, I understand your point, that proof beyond a reasonable doubt, and that conclusion may not govern innocence. But on the way there, the court said certain things that were not, we don't think they proved by a sufficiency that this happened or that happened. The court said there is, quote, no evidence on this point, that there isn't any evidence. It's conjecture, and I can't imagine. Let me just say, how can the Supreme Court, sitting in Springfield, know what evidence there is out there that this woman was responsible for this? The only thing the Supreme Court can know is what evidence is in the record, okay? So therefore, they found sufficient evidence to convict. On a certificate of innocence, you go beyond it. Your burden is not the proof. We already know that the Supreme Court ruled that. Now you've got the burden to prove that your client is innocent. That's a different story. Well, Your Honor, the burden of proof to show my innocence changes, as I've said, because of the preponderance standard. But it can't possibly be that the standard requires, beyond the kind of affirmative things she showed, which was her own testimony, Scott's confession, the parents not having gone or believed there was any abuse, even though they lived in the house, her mother, the doctors who examined the child, not finding abuse. And I do need to say something, because there were a few statements about the record that are very troubling. At the autopsy, this figure of 100 wounds, the coroner said, or the forensic pathologist said, 90 of those were microscopic, and you couldn't see them by the naked eye, and the 10 other ones, the states witnessed it were consistent with regular childhood kind of activity. So the 100 figure is a scary figure. Okay, thank you. And when we portray what was on the neck of Preston as strangulation marks, Preston told his grandmother. He told two stories. He said, Scott did this, and then he said, no, some kids did it with a stick. And the grandmother spoke to him privately. And again, Tabitha went to her mother and said, do I need to be worried here? Now, how could it be that that's not a showing by a preponderance of the evidence that she didn't know? Now, one could speculate, well, she did it for that reason, for this reason. She did it over and over. Someone who knows that they're with an abusive man, and the child is being left there, and she doesn't care if they live or die, doesn't go to other people and say, help me here. Tabitha, the trial court found, had a passive personality. She trusted people. She herself had been the victim of abuse and didn't have the confidence to make her own conclusions. Mr. Leonard got it right. She was in denial. She took things at face value, but this was not a woman who walked the street saying, my children might be being killed as I speak, and I just don't give a damn. Thank you. Thank you, Mr. Marshall, and thank you both for your argument today. We will take this matter under advisement, and to the written disposition within a short period. We'll now take a short recess.